Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ROSA OLIVIERI ORTIZ<br><br>Peticionaria<br><br>v.<br><br>DR. JUAN MATOS ROBLES Y OTROS<br><br>Recurridos | TA2026CE00246 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.:<br>BY2022CV04482<br><br>Sobre:<br>Daños y perjuicios e Impericia médica |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 10 de junio de 2026.

Comparece ante nos la señora Rosa Oliveri Ortiz ("Oliveri Ortiz" o "Parte Peticionaria") mediante el recurso de *Certiorari* presentado el 26 de febrero de 2026. Nos solicita la revisión de las órdenes notificadas el 29 de octubre de 2025, por el Tribunal de Primera Instancia Sala Superior de Bayamón ("foro primario" o "foro *a quo*"). Por virtud de los referidos dictámenes, el foro primario impuso el pago total de $2,916.28 en concepto de costas, a favor de Puerto Rico Medical Defense Insurance Company ("PRMD"), y $1,984.78, a favor del Doctor Juan Matos Robles ("Dr. Matos Robles"), en igual concepto.

Inconforme, el 7 de noviembre de 2025, la Parte Peticionaria radicó *Oposición e Impugnación de Memorandos de Costas y Reconsideración.* Luego de evaluar su escrito, el foro *a quo* dictó *Orden* notificada **el 27 de enero de 2026**, en la cual declaró *No Ha Lugar* dicha petición.[1]

---

[1] *Véase*, SUMAC TPI, Entrada 108.

Por los fundamentos que exponemos a continuación, **expedimos** el auto de *certiorari* a los fines de **modificar** ambas órdenes, y así modificadas, **confirmamos.**

**I.**

El **31 de agosto de 2022**, la señora Oliveri Ortiz instó *Demanda* sobre daños y perjuicios por impericia médica contra de Dr. Matos Robles y PRMD ("Parte Recurrida", conjuntamente).[2] En síntesis, alegó que el 13 de junio de 2019 acudió a la oficina del Dr. Matos Robles, donde se le efectuó una evaluación inicial para colocar un puente dental. Así las cosas, aseveró que el **26 de junio de 2019**, el mencionado doctor le removió los dientes cinco (5) y diez (10) del área maxilar que estaban en perfectas condiciones, y procedió a colocar un implante sin su consentimiento. Ante tales hechos, indicó que el **9 de octubre de 2019** visitó dicha oficina dental para explicarle al doctor sobre su situación, pero este sin su consentimiento le removió el diente número once (11) del área maxilar, y le colocó otro implante. Aseveró, también, que posteriormente, el 28 de enero de 2020, el Dr. Matos Robles le colocó los contrafuertes dentales (*abutment*) en la ubicación cinco (5) y once (11) del área maxilar. Luego de esta fecha, la Parte Peticionaria manifestó "estuvo convaleciendo de dolor provocado por la infección y el rechazo de los implantes, por lo que tuvo que acudir a las oficinas del Dr. Matos **el 7 de julio de 2020, 19 de agosto de 2020, y 31 de agosto de 2020**".[3] (Énfasis nuestro).

A raíz de tal situación, la señora Oliveri Ortiz arguyó que el **30 de junio de 2021,** visitó nuevamente la oficina del referido doctor, donde se le comunicó que la condición de su boca se encontraba relacionada con el puente preparado por el señor

---

[2] *Véase*, SUMACTPI, Entrada Núm. 1.
[3] *Véase*, SUMAC TPI, Entrada Núm. 1, pág. 2

González Bonilla.[4] A la luz de lo informado, arguyó que, desde ese día, comenzó a sospechar que recibió al tratamiento inadecuado. En vista de ello, adujo que, el **31 de agosto de 2021**, envió una reclamación extrajudicial al Dr. Matos Robles para interrumpir el término prescriptivo. Por lo anterior, solicitó el pago total de trescientos treinta y ocho mil dólares ($338,000.00) en concepto de indemnización por daños y perjuicios, costas y honorarios de abogados.

En vista de ello, el 23 de febrero de 2023, el Dr. Matos Robles y PRMD presentaron *Contestación a Demanda*, en la cual alegaron que no existía relación causal entre los eventos que motivaron la presentación de la reclamación y los daños alegados.[5] Arguyeron, también, que el referido doctor tomó todas las precauciones razonables, por lo que, adujeron que las complicaciones experimentadas son consecuencias naturales relacionadas con las condiciones preexistentes de salud que padece la Parte Peticionaria. Por ende, argumentaron que el Dr. Matos Robles no incurrió en impericia profesional, negligencia o falta de cuidado.

Luego de una serie de acontecimientos procesales, el 21 de febrero de 2025, la Parte Recurrida radicó *Moción en Solicitud de Sentencia Sumaria*, a la cual adjuntó la siguiente prueba documental: (1) *Reclamación Extrajudicial*, (2) *Visit Report*, (3) *Transcripción de la Deposición de la señora Oliveri Ortiz*, y (4) carta de la Parte Peticionaria.[6] En esencia, argumentó que, el 30 de junio de 2021, la Sra. Olivieri Ortiz acudió a la oficina del Dr. Matos Robles, a pesar de que ya había transcurrido más de un (1) año desde la culminación del procedimiento dental. Detalló que, durante ese día, la Parte Peticionaria manifestó que no estaba

---

[4] *Véase*, SUMAC TPI, Entrada Núm. 1, págs. 3-4.
[5] *Véase*, SUMAC TPI, Entrada Núm. 13, pág. 6.
[6] *Véase*, SUMAC TPI, Entrada Núm. 68.

conforme con el tratamiento brindado. Indicó que, luego de dicha vista, el 31 de agosto de 2021, ésta le envió la reclamación extrajudicial al Dr. Matos Robles. No obstante, la Parte Recurrida alegó que la notificación de dicha reclamación se presentó tardíamente, es decir, cuando ya había transcurrido más de un (1) año del procedimiento dental efectuado a la señora Oliveri Ortiz. Por tales hechos, solicitó la desestimación de la reclamación por motivos de prescripción.

En respuesta, el 16 de abril de 2025, la Parte Peticionaria radicó *Oposición a Moción en Solicitud de Sentencia Sumaria.*[7] En esta, adujo que el 30 de junio de 2021 sospechó por primera vez que algo no andaba bien respecto al procedimiento dental efectuado. Ello, pues, expresó que, en esa fecha, el Dr. Matos Robles le cotizó la cantidad de diez mil trecientos cincuenta dólares ($10,350.00) para someterse al tratamiento nuevamente. Por tanto, peticionó que se denegara la solicitud de sentencia sumaria presentada por la Parte Recurrida.

Examinados sus respectivos argumentos, el foro primario dictó *Sentencia* el **22 de octubre de 2025, notificada al día siguiente**, en la cual declaró *Ha Lugar* la petición de sentencia sumaria.[8] En virtud de este dictamen, formuló las siguientes determinaciones de hechos:

(1) La Sra. Oliveri presentó una carta de reclamación extrajudicial, por conducto de su representación legal, dirigida a las partes codemandadas el 31 de agosto de 2021.

(2) El 31 de agosto de 2022, la Sra. Olivieri presentó Demanda de epígrafe alegando haber sido sometida a varios procedimientos dentales en la oficina del Dr. Matos Robles que incluyeron la colocación de implantes y contrafuertes dentales entre las fechas del 26 de junio de 2019 al 28 de enero de 2020.

(3) La Sra. Olivieri acudió a las oficinas del Dr. Matos Robles por primera vez el 13 de junio de 2019.

(4) Según surgió de las argumentaciones de ambas partes durante la vista argumentativa, en la primera visita a la

---

[7] *Véase*, SUMAC TPI, Entrada Núm. 74.
[8] *Véase*, SUMAC TPI, Entrada Núm. 83.

oficina del Dr. Matos, la Sra. Oliveri fue acompañada por su hija y por el Sr. Julio González, técnico dental. El hecho del que el Sr. Julio Gonz[á]lez estuvo en la primera visita de la de Sra. Oliveri al Dr. Matos surge también de la demanda y del narrativo a mano hecho por la propia demandante.

(5) El 26 de junio de 2019 la Sra. Olivieri fue sometida a un procedimiento de remoción de una pieza dental rota y de un diente con un "root canal" con movilidad y una corona ya defectuosa, seguido por la colocación de dos implantes el día 26 de junio de 2019.

(6) La Sra. Olivieri acudió a varias visitas con el Dr. Matos Robles hasta completar su tratamiento con la colocación de los "abutments" dentales el 28 de enero de 2020.

(7) Luego de haber culminado el procedimiento con el Dr. Matos Robles, la Sra. Olivieri acudió a dos visitas de seguimiento en las oficinas del Dr. Matos el 7 de julio de 2020 y el 19 de octubre de 2020. Según documentado en el expediente, la Sra. Olivieri había acudido para evaluaciones dentales periódicas sin presentar alergia alguna.

(8) Las partes codemandadas aceptan que posterior a culminar el trabajo del puente, objeto de la demanda, la demandante tuvo otras visitas relacionadas a seguimiento y a otros tratamientos, incluyendo con otros dentistas en el 2021.

(9) El 30 de junio de 2021, habiendo transcurrido más de un año y medio desde la culminación [de] su procedimiento dental con el Dr. Matos Robles, el 28 de enero de 2020, la Sra. Olivieri acudió a las oficinas del Dr. Matos Robles en compañía de su hija.

(10) De la visita del 30 de junio de 2021 surge del récord médico de la Sra. Olivieri en la oficina del Dr. Matos que esta le indicó que no estaba satisfecha con el puente que el Sr. Julio le había preparado, y que deseaba removerlo pues no se sentía bien con él debido a la apariencia del puente, pues Julio le había prometido un puente en otro material. La Sra. Olivieri indicó haber visitado a otro dentista debido a que había presentado inflamación y le realizaron un *root canal* en el diente #4 o #6. En la visita del 30 de junio de 2021 el Dr. Matos Robles evaluó el área del puente superior y le presentó opciones a la Sra. Olivieri para reemplazo del puente con implantes, indicándole que los puentes en el área maxilar pueden ser removibles sujetados a los implantes o fijos en Zirconia para evitar alguna alergia en la boca.

(11) La Sra. Olivieri fue depuesta el 10 de septiembre de 2024.

(12) Surge del testimonio de la Sra. Olivieri, bajo juramento durante dicha deposición, el cual no ha sido controvertido, que, de la última visita en la que el Dr. Matos Robles le colocó la dentadura que Julio le llevó a ella en un pote, salió anestesiada y con el trabajo mal hecho, que no quería. Indicó también que en esa misma fecha ella entendía que el Dr. Matos Robles le había hecho un trabajo incorrecto, y que estaba mal el dentista.

(13) Según surge del expediente médico de la Sra. Olivieri en la oficina del Dr. Matos Robles, la última visita de tratamiento, donde se le colocó la dentadura a la Sra. Olivieri, fue el día 28 de enero de 2020.

(14) Durante su deposición, la Sra. Olivieri indicó que había realizado unas anotaciones a manuscrito en una fecha cercana a los hechos relacionados al presente caso, copia de dichas notas también han sido examinadas por este Tribunal.

(15) También surge de la transcripción de la deposición que la Sra. Olivieri explicó que su hija le ayudó a escribir sus notas en computadora, pero ella lo había escrito de su puño y letra, copia de las referidas notas también han sido examinadas por este Tribunal.

(16) De las notas a manuscrito de la Sra. Olivieri, esta detalla que en el mes de mayo del 2020 se encontró con Julio y le sacó turno y le llevó a la guagua un bolso sellado con el puente y el Dr. Matos Robles se los pegó, pero a la semana se le cayeron y ahí fue que se dio cuenta del alegado daño en sus dientes y muelas del lado derecho.

(17) De las notas a computadora de la Sra. Olivieri, esta indicó que, el 31 de agosto de 2020, el Dr. Matos la atendió nuevamente y le pegó los dientes permanentemente; ese día el Sr. Julio González le entregó frente al consultorio del Dr. Matos una bolsa con los dientes fijos, y desde entonces siente que se le "coagula la saliva", se le seca la boca, siente un mal sabor como a hierro y a tierra. La Sra. Olivieri indica que desde ese día no ha tenido vida.

(18) Aunque la Sra. Olivieri ha dado varias fechas de la colocación del puente, en lo que ha sido consistente en sus escritos y testimonio en deposición es en cuanto a que el día en que el Dr. Matos le colocó el puente fijo fue cuando identificó que el trabajo del dentista estaba mal hecho.

(19) Del expediente médico de la Sra. Olivieri en la oficina del Dr. Matos surge claramente que la última visita de tratamiento con relación a los impla[n]tes y el puente sobre ellos fue el día 28 de enero de 2020, y que la Sra. Olivieri acudió a visitas de seguimiento el 7 de julio de 2020 y el 19 de agosto de 2020.

(20) Del récord médico de la Sra. Olivieri en la oficina del Dr. Matos no surge que hubiera existido alguna visita de la Sra. Olivieri para el día 31 de agosto de 2020 como alega la parte demandante en la versión a computadora de sus anotaciones.

(21) Surge de dicho récord médico de la Sra. Olivieri en la oficina del Dr. Matos Robles es que la última visita de tratamiento relacionada al puente fue el día 28 de enero de 2020.

(22) Las dos visitas posteriores al 28 de enero de 2020 fueron visitas de seguimiento para evaluación periódica y no de tratamiento relacionadas con el puente.

(23) Ha quedado claro, tanto de su testimonio en deposición bajo juramento, como de su escrito a puño y letra que La Sra. Olivieri conocía sobre el alegado daño e identificó al dentista, Dr. Matos como la persona responsable por ese alegado daño desde que cementaron el puente.

(24) El puente fue cementado y concluidos los trabajos en cuanto a dicho puente desde el 28 de enero de 2020.

(25) Al enviar la Sra. Olivieri la reclamación extrajudicial el 31 de agosto de 2021 a los codemandados había transcurrido en exceso de un año de que la Sra. Olivieri,

según su testimonio bajo juramento, tenía conocimiento del alegado daño y había identificado al Dr. Matos como la persona responsable del mismo, por lo que dicha reclamación extrajudicial no interrumpió término prescriptivo alguno.

(26) Al radicar la Sra. Olivieri su demanda en el caso de autos había trascurrido en exceso de dos años de que la Sra. Olivieri, según su propio testimonio bajo juramento, tenía conocimiento el alegado daño y había identificado al Dr. Matos como la persona responsable del mismo.[9]

De conformidad con lo anterior, el foro *a quo* desestimó con perjuicio la *Demanda* por prescripción, a la luz del siguiente razonamiento:

> **[S]i aplicamos la teoría cognoscitiva del daño al testimonio de la Sra. Olivieri bajo juramento en su deposición esta tuvo conocimiento del daño y quien lo causó desde el día que terminaron los trabajos y cementaron el puente sobre los implantes, cuando salió de la oficina del Dr. Matos. Por lo que desde esa fecha ella tenía conocimiento del daño, aunque no conociera su magnitud, y de quien lo había causado. Quedando claro con la evidencia presentada y no controvertida de que la fecha en que el Dr. Matos culminó el tratamiento de los implantes y el puente sobre estos fue el 28 de enero de 2020.**[10] (Énfasis suplido).

Con posterioridad, el 28 de octubre de 2025, el Dr. Matos Robles presentó *Memorando de Costas*.[11] En particular, peticionó el pago de las siguientes partidas: **(1) $1,000.00, en concepto de honorarios del Dr. Canino Rivera; (2) $792.48, por razón de la toma y transcripción de la deposición de la señora Oliveri Ortiz; (3) $82.30, por la toma y transcripción del Dr. Julio González Bonilla; (4) $110.00 en concepto de honorarios del emplazador. En vista de lo anterior, solicitó el pago total de $ 1,984.78.**

En igual fecha, DBR radicó *Memorando de Costas*, mediante la cual solicitó el pago de los siguientes montos**: (1) $135.00, por razón de los sellos de comparecencia del Dr. Matos Robles y PRMD, (2) $1,000.00, en concepto de honorarios del Dr. Danny Mora, (3) $1,713.26, por transcripción de las deposiciones, (4)**

---

[9] *Véase*, SUMAC TPI, Entrada Núm. 83, págs. 2-7.
[10] *Íd.*, pág. 15.
[11] *Véase*, SUMAC TPI, Entrada Núm. 84.

**$68.54, por razón del *sale tax* (taquígrafo), (5) $352.00, en concepto de mensajería, (6) $1.46, por correo postal, (7) $9.00, por razón de millaje, y (8) $124.75, por razón de fotocopias. Conforme a lo anterior, requirió el pago total de $3,404.01.**

**En respuesta a la petición radicada por PRMD, emitió *Orden* notificada el 29 de octubre de 2025, mediante la cual impuso el pago de $2,916.28, en concepto de los gastos del litigio.[12]**

**En igual fecha, el foro primario notificó *Orden*, en la cual impuso el pago de $1,984.78, en concepto de costas a favor del Dr. Matos Robles.[13]**

Oportunamente, el 7 de noviembre de 2025, la Parte Peticionaria presentó *Oposición e Impugnación de Memorando de Costas y Reconsideración.*[14] En síntesis, adujo que los pagos impuestos por el foro *a quo* no corresponden a los gastos incurridos por la Parte Recurrida. Igualmente, arguyó que los montos otorgados en tal concepto tampoco resultaron razonables ni necesarios para la tramitación del litigio. Ahora bien, precisó que las únicas partidas que la Parte Recurrida tiene derecho a recobrar los correspondientes a los aranceles de presentación y los gastos relacionados con la transcripción de la deposición de la señora Ortiz Oliveri.

Examinados sus argumentos, el foro primario declaró *No Ha Lugar* la *Oposición e Impugnación de Memorando de Costas y Reconsideración*, **mediante la *Orden* notificada el 27 de enero de 2026**.[15]

Inconforme, el 26 de febrero de 2026, la Parte Peticionaria acudió ante este Tribunal de Apelaciones mediante el recurso de *Certiorari*, en el cual esbozó los siguientes señalamientos de error:

---

[12] *Véase,* SUMAC TPI, Entrada 86.
[13] *Véase,* SUMAC TPI, Entrada 87.
[14] *Véase*, SUMACTPI, Entrada Núm. 89.
[15] *Véase* SUMAC TPI, Entrada 108.

El Tribunal de Primera Instancia erró al conceder las costas y gastos a los demandados-recurridos a pesar de no haber sido útiles y mucho menos necesarios para realizar la determinación de prescripción alcanzada en su Sentencia Final.

El 10 de marzo de 2026, esta Curia emitió *Resolución*[16] en la concedimos a la Parte Recurrida un término a vencer el 30 de febrero de 2026 para presentar su alegato en oposición. De conformidad con nuestro decreto, el 27 de marzo de 2026, la Parte Recurrida presentó *Oposición a Certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica pertinente a la controversia ante nos.

## II.
### A. *Recurso de certiorari*

Es norma reiterada que el auto *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Artículo 670 del Código de Enjuiciamiento Civil, Ley Núm. 6 del 31 de marzo de 1933, 32 LPRA sec. 3491, según emendada. La característica distintiva de este recurso "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

Como regla general, "las resoluciones atinentes a asuntos postsentencia no se encuentran incluidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente

---

[16] **En virtud de dicha *Resolución*, esta Curia ordenó la consolidación del recurso de epígrafe con la *Apelación* (TA2026AP00209). No obstante, el 5 junio de 2026, este Tribunal de Apelaciones dictó *Resolución*, en la cual ordenamos la desconsolidación de dichos recursos a los fines de proveer una mejor disposición de estos y facilitar los trámites del caso.**

sujetas a escrutinio mediante el recurso de *certiorari*". *IG Builders et al. v. BBVAPR, supra*, pág. 339. No obstante, somos conscientes de que en ciertas instancias "[d]e imponerse las limitaciones de la Regla 52.1, 32 LPRA Ap. V, a la revisión de dictámenes postsentencia, inevitablemente quedarían sin posibilidad alguna de revisión apelativa". *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023). **En tales casos, el recurso de *certiorari* es el mecanismo adecuado para solicitar la revisión de los asuntos postsentencia. *Íd.* En armonía con lo anterior, la Regla 44.1(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(b), preceptúa que "[l]a resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Apelaciones mediante el recurso de *certiorar*i".** (Énfasis nuestro).

Ahora bien, al evaluar si procede la expedición o no del *certiorari* es preciso acudir a los parámetros dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025):

- **(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.**
- **(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.**
- **(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.**
- **(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.**
- **(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.**
- **(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.**
- (G) **Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia**. (Énfasis nuestro).

Estas consideraciones orientan la función del foro apelativo para ejercer sabiamente nuestra facultad discrecional. *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209. Ello, pues, nos

corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 849 (2023). Por tanto, los tribunales revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

### B. *Imposición de pago en concepto de costas*

La Regla 44.1(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(a), instaura el procedimiento para la imposición de costas ante el foro primario, según lee a continuación:

> **(a) *Su concesión.* — Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra**. (Énfasis nuestro).

De acuerdo con nuestro Máximo Foro, "las costas son los gastos, necesariamente incurridos en la tramitación de un pleito o procedimiento, que un litigante debe reembolsar a otro por mandato de ley o por determinación discrecional del juez". *ELA v. El Ojo de Agua Development*, 205 DPR 502, 527 (2020), (citando a R. Hernández Colón*, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 4201, pág. 426). Cónsono con lo anterior, el inciso (a) de la Regla 44.1 de Procedimiento Civil, *supra*, tiene dos propósitos, a saber: (1) restituir lo que una parte perdió por hacer valer su derecho al ser obligada a litigar, y (2) servir como disuasivo para la litigación

inmeritoria, temeraria, o viciosa que se lleva a cabo con el propósito de retrasar la justicia. *Class Fernández v. Metro Health Care*, 214 DPR 348, 362 (2024). *Rosario Domínguez et als. v. ELA et al.*, 198 DPR 197, 212 (2017). Así, pues, la precitada regla procesal tiene una función reparadora, pues permite el reembolso de los gastos necesarios y razonables que tuvo que incurrir la parte prevaleciente al tramitar su pleito. *Rosario Domínguez et als. v. ELA et al.*, *supra,* pág. *211*; *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 934 (2012).

Ahora bien, la imposición de costas no es un asunto que opera automáticamente. La parte interesada debe cumplir con las exigencias dispuestas en el inciso (b) de la Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(b), para que el foro primario pueda evaluar su solicitud, tal como se dispone a continuación:

> **(b) *Cómo se concederán.* — La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento de parte o mediante certificación del abogado o abogada y consignará que, según el entender de la parte reclamante o de su abogado o abogada, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiese impugnación, el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas. Cualquier parte que no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. <u>El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Apelaciones mediante el recurso de certiorari.</u> De haberse instado un recurso contra la sentencia, la revisión de la resolución sobre costas deberá consolidarse con dicho recurso.** (Énfasis nuestro).

Cabe señalar que, "**una vez reclamadas por la parte prevaleciente, la imposición de costas a beneficio de la parte**

**prevaleciente resulta mandatoria**". *Maderas Tratadas v. Sun Alliance et al.*, *supra,* a la pág. 934. No obstante, es importante explicar que, en tales circunstancias, "el tribunal tiene amplia discreción para evaluar la razonabilidad y determinar la necesidad de los gastos detallados". *Rosario Domínguez et als. v. ELA et al.*, *supra*, pág. 212. En cuanto a este análisis, el Tribunal Supremo de Puerto Rico ha establecido las siguientes consideraciones para precisar qué constituye gasto razonable y necesario en litigio:

> [S]olo son recobrables aquellos gastos necesarios y razonables para la tramitación del pleito, procedimiento o apelación que un litigante debe reembolsar a otro. A modo de ejemplo, **este Tribunal ha determinado que los siguientes gastos son recobrables: sellos de radicación de las alegaciones, sellos cancelados en las mociones, gastos de emplazamiento, sellos cancelados para efectuar embargos, transcripción de evidencia, deposiciones, entre otros**.
>
> Por el contrario, como excepción, **no serán recobrables los gastos ordinarios de oficina de los abogados de las partes**. *Class Fernández v. Metro Health Care, supra,* págs. 362-363.

Sin embargo, tampoco son recobrables los gastos de transcripciones de récords de vistas cuando tales transcripciones se solicitan por resultar convenientes, mas no necesarias para los reclamantes. *Íd.*, pág. 363 (citando a *Pereira v. I.B.E.C.*, 95 DPR 28, 78 (1967)). Ahora bien, "el gasto incurrido en obtener deposiciones es recobrable si son necesarias, aunque no se usen en las vistas del caso". *Íd.* **Por último, "la compensación de peritos por vía de costas no es automática. Deben concederse si el testimonio pericial presentado por la parte que los reclama era necesario para que dicha parte prevaleciera**". *Arrieta v. Chinea Vda. de Arrieta,* 139 DPR 525, 542 (1995); *Meléndez v. Levitt & Sons of P.R.,* 104 DPR 797, 811 (1976). (Énfasis nuestro).

### III.

En el recurso de epígrafe, la señora Oliveri Ortiz nos invita a revocar las órdenes que concedieron las costas a favor de la Parte Recurrida por considerar que las partidas reclamadas no

resultaron necesaria para la tramitación del litigio. En su alternativa, nos solicita que dispongamos que los Recurridos tienen derecho a recobrar únicamente los gatos incurridos por la presentación de aranceles y la deposición de la señora Oliveri Ortiz.

En oposición, la Parte Recurrida señala que el foro primario actuó correctamente al conceder las partidas en concepto de costas. Argumenta que los gastos incurridos resultaron necesarios para que prosperara la solicitud de desestimación por la vía sumaria. Por lo que, aduce que procede denegar el recurso discrecional.

De entrada, establecemos que el recurso ante nuestra consideración versa sobre un asunto postsentencia de impugnación de costas. En tales circunstancias, la Regla 44.1(b) de Procedimiento Civil, *supra*, permite recurrir ante este Foro Intermedio mediante el vehículo procesal de *certiorari*. En vista de ello, nos compete acudir a la Regla 40 del Tribunal de Apelaciones, *supra*, para examinar si procede o no expedir el auto de *certiorari*. *Veamos.*

Luego de evaluar sosegadamente el recurso que nos ocupa, determinamos que la situación de hechos planteada es la más indicada para el análisis del problema expuesto por la Parte Peticionaria, de conformidad con los parámetros orientativos establecidos en la precitada regla apelativa. Asimismo, adelantamos que nos corresponde intervenir en el dictamen aquí impugnado a los únicos fines de reducir los gastos identificados como honorarios de peritos, los cuales se impusieron en concepto de costas. A su vez, puntualizamos que el foro *a quo* impuso automáticamente tales costas sin considerar la posición de la señora Oliveri Ortiz, en contravención a la Regla 44.1(b) de Procedimiento Civil, *supra*. Por tanto, nos debemos pronunciar al

respecto para brindar un remedio justo al amparo del estado de derecho vigente.

Surge del expediente ante nos que, el foro *a quo* concedió la suma total de $2,916,28, a favor de PRMD, aseguradora del Dr. Matos Robles, en concepto de gastos del litigio.[17] Particularmente, le ordenó a la Parte Peticionaria a pagar las siguientes partidas a favor de PRMD: (1) $135.00, por razón de los sellos de comparecencia del Dr. Matos Robles y PRMD; (2) $1,000.00, en concepto de honorarios del Dr. Danny Mora; (3) $1,713.26, por transcripción de las deposiciones; (4) $68.54, por razón del *sale tax* (taquígrafo).

**No obstante, examinada la totalidad del expediente, determinamos eliminar los $1,000.00, otorgados por los gastos incurridos en honorarios del Dr. Danny Mora (perito). Razonamos que tal gasto no resultó necesario para que la Parte Recurrida prevaleciera en la contención.** Véanse, *Arrieta v. Chinea Vda. de Arrieta, supra,* pág. 542; *Meléndez v. Levitt & Sons of P.R., supra,* pág. 811. **Ello, pues, la desestimación de la *Demanda* respondió al hecho de que la reclamación extracontractual se encontraba prescrita. Lo anterior implica que la intervención pericial no resultó necesaria para alcanzar tal resultado. Por tanto, eliminada dicha partida, se impone la suma total de $1,916.8, en concepto de costas a favor de PRMD.**

Atendido lo anterior, procedemos a efectuar similar análisis respecto al otorgamiento de costas a favor del Dr. Matos Robles. Sobre este particular, surge del expediente ante nos que, el foro primario impuso el pago total de $1,984.78.[18] Particularmente, concedió las siguientes partidas: (1) $1,000.00, en concepto de

---

[17] *Véase*, SUMAC TPI, Entrada 86.
[18] *Véase*, SUMAC TPI, Entrada 87.

honorarios del Dr. Alfredo Canino Rivera; (2) $792.48, por razón de la toma y transcripción de la deposición de la señora Oliveri Ortiz; (3) $82.30, por la toma y transcripción del Dr. Julio González Bonilla; (4) $110.00 en concepto de honorarios del emplazador.

**Sin embargo, tras examinar el expediente ante a la luz del marco jurídico discutido en el acápite anterior, nos compete nuevamente eliminar los $1,000.00, otorgados por los gastos incurridos en honorarios el Dr. Canino Rivera (perito). Ello, pues, la intervención pericial no resultó necesaria para que la parte prevaleciera en la reclamación. Por consiguiente, eliminada dicha partida, se impone la suma total de $984.78, en concepto de costas a favor de. Dr. Matos Robles.**

En cuanto al resto de las partidas concedidas en concepto de costas no intervendremos, toda vez que su otorgamiento es consistente con la normativa que dimana de la Regla 44.1 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. En virtud de lo anterior, expedimos el auto de *certiorari*, a los fines de modificar las órdenes concernientes a la imposición de costas, y así modificadas, confirmamos.

### IV.

Por los fundamentos que anteceden, *expedimos* el auto de *certiorari*, y, en consecuencia, *modificamos* **los dictámenes recurridos a los únicos fines de reducir las partidas concedidas en concepto de costas a: (1) $1,916.8, a favor de PRMD, y (2) $984.78, a favor del Dr. Matos Robles con el propósito de que reflejen exclusivamente los gastos necesarios que incurrieron dichas partes para prevalecer en el litigio. Así modificadas,** *confirmamos* **las órdenes en cuanto a sus demás extremos, toda vez que no revisten abuso de discreción, prejuicio,**

**parcialidad, error manifiesto, por parte del Tribunal de Primera Instancia, Sala Superior de Bayamón.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones